# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| JOSEPH HILL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | CAUSE NO. 3:08-CV-370 JVB |
| ) | |
| SUPERINTENDENT, INDIANA ) | |
| STATE PRISON, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

Petitioner Joseph Hill submitted a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 dealing with loss of earned credit time in a prison disciplinary hearing. Respondent has filed a response to the Court's Order to Show Cause and has submitted the administrative record of the disciplinary proceedings against Hill. Petitioner has filed a traverse.

According to the parties' submissions, on November 15, 2007, STG Coordinator C. McKinney wrote a conduct report charging Hill with unauthorized alteration of state property. (DE 6-2). The conduct report alleged that Hill provided Vaseline to another inmate who smeared it over the lens of a surveillance camera, obscuring the camera's view of the range. On November 30, 2007, a disciplinary hearing board ("DHB") found Hill guilty of the charge against him and imposed an earned credit time deprivation of 180 days, six months in disciplinary segregation, and $3.75 in restitution to clean the camera lens. Hill appealed unsuccessfully to the Superintendent and the final reviewing authority.

Where prisoners lose good time credits at prison disciplinary hearings, the Fourteenth Amendment's Due Process Clause guarantees them certain procedural protections, including (1)

advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by the fact finder of evidence relied on and the reasons for the disciplinary action, *Wolff v. McDonnell*, 418 U.S. 539 (1974), and "some evidence" to support the decision of the prison disciplinary board." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Hill presents three grounds in his petition for writ of habeas corpus. In ground one of his petition he asserts that he was denied a "fair hearing / impartial decision makers." (DE 1-1 at 3). One of the procedural due process rights guaranteed to inmates during a disciplinary hearing by *Wolff* is the right to be heard before impartial decision makers. However, due process requires recusal of the decision-maker only where the decision-maker has a direct personal or otherwise substantial involvement in the circumstances underlying the charges against the offender. *Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983), *cert. denied*, 465 U.S. 1025 (1984) (citing *Rhodes v. Robinson*, 612 F.2d 766, 773 (3d Cir. 1979)).

Hill does not allege that any board member was directly or substantially involved in the circumstances which precipitated the disciplinary charge,[1] and in his traverse, he clarifies his claim in ground one by stating that the "D.H.B. did not allow Hill a fair hearing process protecting all *procedural due process right(s)* prior to their decision. The record is devoid of even 'some *evidence*' against Hill." (DE 9-2 at 1) (emphasis original). This passage establishes that Hill does not contend that his decisionmakers were not "impartial" as that term is used in *Wolff*, but rather that he contends

---

[1] Hill does accuse one DHB member, J. White, "of not having any training to be part of the D.H.B." (DE 1-1 at 4). But the United States Constitution does not require that DHB members have any particular training, and being untrained does not constitute "partiality" as defined by *Wolff*.

2

that the DHB denied him a fair hearing because they found him guilty without sufficient evidence.

The amount of evidence needed to support a finding of guilt in prison disciplinary hearings is very modest: there need only be "some evidence" to support the decision of the prison disciplinary board." *Hill*, 472 U.S. at 455. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (citing *Hill*, 472 U.S. at 455–56). In the appropriate circumstances, such as where the reporting officer personally observed the infraction, the conduct report alone may be sufficient evidence to support a finding of guilt. *See McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

In his traverse, Hill notes that the conduct report identifies him as giving Vaseline jelly to Inmate Sides, who then smeared the petroleum jelly on the lens of the surveillance camera. The investigator identified Hill after viewing the tapes made before the camera's view was obscured by the petroleum jelly. Hill argues that "[t]his camera (film) listed as the only physical evidence was not provided to Hill *in any form*." (DE 9-2 at 2) (emphasis original). He further asserts in his traverse that this amounted to refusal to consider exculpatory evidence.

*Wolff* provides that an inmate may call witnesses and present exculpatory evidence in his defense, though this right may be limited by prison officials consistent with institutional safety and correctional goals. *Wolff*, 418 U.S. at 566. Hill states in his petition that he "was legally entitled to review whatever evidence was being used prior to the commencement of the hearing." (DE 1-1 at 3). He asserts that this entitlement is based on Indiana Department of Correction ("IDOC") Adult Disciplinary Policy ("ADP"), which is an unpromulgated IDOC procedure**.** But violations of state law, including violations of ADP provisions, do not state a claim for federal habeas relief. *Hester v. McBride*, 966 F.Supp. 765, 774–75 (N.D. Ind. 1997).

3

The rule of *Brady v. Maryland*, 373 U.S. 83 (1963), "requiring the disclosure of material exculpatory evidence, applies to prison disciplinary proceedings." *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Accordingly, prisoners have a right under *Wolff* to request exculpatory evidence, which could include videotapes.[2] But prisoners may waive the right to present evidence by failing to request it prior to the hearing. *Miller v. Duckworth*, 963 F.2d 1002, 104 n. 2 (7th Cir. 1992). In *Piggie*, the inmate asked that the DHB review a videotape of the incident that lead to the charges against him. The Court of Appeals for the Seventh Circuit held that Piggie's request for the DHB to consider the videotape entitled him to have the DHB review it, though they could deny Piggie the right to see it himself based on valid security concerns.

Under *Piggie*, had Hill requested the videotape as evidence the DHB would have been required to review the relevant portions of the tape. But the administrative record establishes that Hill did not request the videotape as evidence prior to the hearing. A screening in an Indiana prison disciplinary proceeding is the functional equivalent of an arraignment in a criminal proceeding. At a screening, one of the things the screening officer asks is whether an accused inmate wishes to call witnesses or present evidence. In the screening report in this case, the screening officer checked the box on the form labeled "I do not request any physical evidence." (DE 6-5). Hill signed the screening report, confirming that he was aware that the report reflected that no physical evidence had been requested. A prisoner may ask for evidence such as a videotape after a screening but before

---

[2] The administrative record suggests that this videotape was inculpatory rather than exculpatory. According to the conduct report, the accusing officer watched the tape and identified Hill as providing petroleum jelly to another inmate who then smeared it on the camera lens. (DE 6-2). In his traverse, Hill states that another inmate named Sides admitted smearing the jelly on the lens and that Sides exonerated Hill. (DE 9-2 at 2). But the DHB concluded that the videotape showed Hill's involvement because he provided Sides with the petroleum jelly used to disable the camera and the DHB elected not to believe Sides's statement that Hill was not involved.

4

the hearing. But Hill does not state that he did, and likewise, nothing in the administrative record suggests that he did so. This constitutes a waiver of Hill's right to present physical evidence at the hearing. *See Miller*, 963 F.2d at 104 n. 2 (waiting until the day of the hearing to identify witnesses waives the right to call the witnesses).

Because Hill did not request the videotape as evidence, the DHB was not required to view it. The conduct report states that Mr. McKinney and Sgt. McDaniel viewed the videotape and were able to identify Hill as being involved in the effort to render the camera ineffective. (DE 6-2). The DHB wrote in the portion of the hearing form entitled "reason for the decision" that the "Conduct Report is clear & concise. Offender was seen [by] the camera pointing at the camera, [he] went to his cell [and] got something and the the (sic) lens was cover[ed] by someone else. This is a breach of security. Therefore we find the offender guilty." (DE 6-9 at 1). The DHB is entitled to rely on the statement of the reporting officer that the videotape showed Hill assisting another inmate to cover the camera, and that evidence is sufficient to support a finding of guilt.

In ground two of his petition, Hill asserts that he was subjected to "unfair higher decision makers." (DE 1-1 at 4). He specifically states that the final reviewing authority in the IDOC appellate process "doesn't even attempt to address/answer the issues raised in any manner, instead Hill was given the standard form Penfold sends to everyone being denied with no attempt to express a full review given to each issue raised."*Id*. Hill also complains about the handling of his appeal at the institutional level. But an administrative appeal process is not one of the rights established by *Wolff,* and it is not one of the grounds upon which a federal court may grant a petition for writ of habeas corpus in a case dealing with loss of earned credit time. In *White v. Indiana Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001), the Court of Appeals for the Seventh Circuit stated, "*Baxter v. Palmigiano*, 425 U.S. 308 (1976), warns the courts of appeals not to add to the procedures required

5

by *Wolff*, which, *Baxter* held, represents a balance of interests that should not be further adjusted in favor of prisoners." (parallel citations omitted).

In ground three of his petition, Hill asserts that the DHB did not preserve the videotape until the IDOC appeals process was completed. (DE 1-1 at 5). Hill argues that under IDOC policies (DE 1-4) the IDOC should have preserved the videotape until the administrative appeals process and federal review was completed.

The IDOC rule Hill relies on does not support a claim for habeas relief. *Hester*, 966 F.Supp. at 774–75 (violation of IDOC rules do not state a claim for federal habeas relief). To the extent Hill relies on federal law, his claim is without merit. Had the videotape been used as evidence by the DHB, either on their own initiative or at Hill's request, then the IDOC should have made the videotape part of the administrative record. But the DHB did not rely on the videotape and Hill did not request it. Accordingly, that prison officials may not have kept the videotape states no claim upon which habeas corpus relief can be granted.

For the foregoing reasons, the Court DENIES this petition for writ of habeas corpus.

SO ORDERED on April 21, 2010

       s/ Joseph S. Van Bokkelen
      JOSEPH S. VAN BOKKELEN
      UNITED STATES DISTRICT COURT
      HAMMOND DIVISION